DETERMINED IN THE

# FIRST DEPARTMENT

AT

# GENERAL TERM,

## June, 1893.

The People of the State of New York, Respondent, *v.* William B. Hayes, Appellant.

*Perjury — number of witnesses necessary — conviction of, need not await the trial of the civil action — immoral consideration — mitigation of penalty, not ex post facto — immediate commitment of a witness — intent in the case of a false certificate of acknowledgment — privileged communications between husband and wife.*

On appeal from a judgment convicting the defendant of perjury in making a false affidavit to open a default in a civil action brought against him on a promissory note by the payee thereof, who was a woman, it was claimed that perjury could not be predicated upon the defendant's denial in such affidavit that he ever gave the payee the note in question, for the reason that the fact was immaterial in that the note was founded upon an immoral consideration, namely, the continuance of illicit intercourse between the defendant and the payee.

*Held,* that there was an entire absence of evidence that the note was given to secure the continuance of illicit intercourse, and, hence, that the question of materiality need not be considered.

A promissory note given by a married man to a woman whom he has seduced under promise of marriage, followed by the birth of a child, in expiation of the wrong-doing and not in furtherance of it, is not illegal.

On the trial of an indictment for perjury, the testimony of a single witness is sufficient to prove that the defendant swore as alleged in the indictment (as, *e. g.*, the testimony of a notary public that the defendant swore to an affidavit before him); it is only the falsity of the statement sworn to which must be substantiated by the oath of two witnesses or of one witness supported by corroborating and independent circumstances equivalent in weight to the testimony of a single witness.

*Semble,* that a court is not deprived of jurisdiction to try an indictment for perjury, based upon the making of a false affidavit on which the opening of a default in a civil action was obtained, by the fact that the civil action is still pending and undetermined. The question of postponement on that ground is not jurisdictional, but is a question of propriety and rests in the discretion of the trial court.

The amendment of section 106 of the Penal Code by chapter 662 of the Laws of 1892, striking out the minimum limitation upon the penalty for perjury by changing the penalty from "imprisonment for not less than two nor more than ten years," to "imprisonment for a term not exceeding ten years," is in mitigation of the penalty and hence is not in violation of the Constitution, as being *ex post facto,* as to an offense committed before its enactment.

Upon the trial of an indictment for perjury, a witness for the defense admitted, upon cross-examination, that he made a false certificate as a notary public to the effect that the wife of the defendant had appeared before him, and acknowledged the execution of an instrument purporting to have been executed by her ; whereas, as matter of fact, she had not appeared before him nor acknowledged the execution of the instrument. At the close of the witness' testimony, the trial judge directed his committal for the offense thus admitted.

*Held,* that the action of the judge was proper and was not open to the objection that it prejudiced the defendant before the jury.

An intent to defraud is not required to constitute the crime of forgery in the making of a false certificate of acknowledgment by an officer authorized to take the proof or acknowledgment of an instrument which by law may be recorded; all that is required is that he should willfully certify falsely. (Penal Code, § 510.)

It appeared that the order opening the default in the civil action, granted upon the affidavit the making of which was alleged to constitute the perjury charged, was, by a clerical error, dated at a Special Term held on the 29th day of April, 1889, whereas it should have read 1891.

*Semble,* that this error furnished no ground for striking out the entire record in the action.

The plea of privileged communication will not avail a defendant in a criminal trial to prevent the introduction in evidence against him of letters written to him by his wife, brought into court by a third party to whom he has given them.

Appeal by the defendant, William B. Hayes, from a judgment of the Court of General Sessions of the Peace in and for the city and county of New York, entered on the 23d day of February, 1893, upon the verdict of a jury convicting the defendant of the crime of perjury.

*George M. Curtis,* for the appellant.

*Henry B. B. Stapler,* for the respondent.

BARRETT, J. :

The indictment charged the defendant with perjury in the making of a false affidavit, used upon a motion to open a default in a civil action.

The action in which the default occurred was in the Supreme Court in Monroe county. This action was founded upon a promissory note for $2,000, made by the defendant and payable to the order of the plaintiff therein, Annie M. Keating.

In the affidavit charged to be false, the defendant stated that he never gave Annie M. Keating a note, or ever had occasion to give her one; that he had never seen the note for $2,000, upon which her action was based, and knew nothing whatever about it; that, at the time when the note was dated, to wit, October 27, 1887, he was in Florida — the note purporting to have been made in New York — and that he went to Florida the 1st of September, 1887, and did not return until the 1st of May, 1888.

Upon this affidavit a motion was made to open the default, which motion was granted, and the defendant was permitted to answer.

Evidence was given upon the trial tending to show that the affidavit, in the particulars specified in the indictment, was false; that, in truth, the defendant had given the note in question to Annie M. Keating; that he so gave it to her in New York upon the 27th of October, 1887, and that he was in New York and not in Florida upon that date.

The defendant offered evidence tending to sustain his affidavit, but this evidence was weak, contradictory and hopelessly improbable. Upon full consideration of all the evidence, we think the falsity of the affidavit was overwhelmingly established and the verdict of the jury thoroughly justified.

Numerous questions of law are presented by the appellant, but they are for the most part frivolous. We do not propose to notice in detail the enormous mass of pointless exceptions which were taken to rulings upon evidence during this lengthy trial. The exceptions were in the main without merit, and in no instance was the defendant prejudiced by the rulings of the learned court.

There are some questions, however, which should be considered:

(1) It is claimed that perjury could not be predicated of the

defendant's denial that he ever gave Miss Keating the note in question, for the reason that the fact was immaterial in that the note was void as founded upon an immoral consideration. We need not consider the question of materiality in view of the entire absence of evidence to sustain the premise. There was not a particle of evidence that the note was given to secure the continuance of illicit intercourse. Miss Keating testified that in the year 1884 the defendant asked her to marry him and gave her an engagement ring. She had no knowledge at this time that he was a married man. Thereafter, and while she was still in ignorance of his marital *status*, illicit relations commenced between them, which continued for some years, and resulted in the birth of a boy child on the 11th of April, 1887. Before the birth of this child Mrs. Hayes learned of her husband's infidelity, and she had, in fact, become acquainted with the whole situation. Being herself childless, she desired to obtain possession of the boy. She says that the consideration of the note was Miss Keating's promise to let her have the child, and that upon the latter's refusal the note was returned. Miss Keating, on the other hand, says that the consideration was the settlement of a suit which she had threatened to bring against the defendant. Neither of these witnesses intimates that there was an immoral consideration. The effect of Mrs. Hayes' testimony is, in substance, that the note was not really delivered. That of Miss Keating suggests a release of her right of action for breach of promise. The appellant contends that Miss Keating's threat to consult a lawyer and commence a suit against him was an act of blackmail; but this contention ignores, *first*, the original promise of marriage, and, *second*, the fact that she was the mother of his child. The woman was not an adventuress, seeking by falsehood and baseless threats to extort money from an innocent man. It was proper, under the circumstances, that he should provide for her.

The law condemns contracts in furtherance of immorality, but not those made in expiation of wrong-doing. This general principle is well settled. Thus it was held in *Bunn* v. *Winthrop* (1 Johns. Ch. 329), that past seduction is a valid consideration for a covenant for pecuniary reparation and support of the offspring. In *Todd* v. *Weber* (95 N. Y. 190), it was held that there was nothing illegal in an undertaking by a putative father to pay a sum of money to

another in consideration of the support of his illegitimate child, though that other was the mother of the child. The same rule was laid down in *Jennings* v. *Brown* (9 M. & W. 496). In *Jackson* v. *Finney* (33 Ga. 512), a note given by the father of an illegitimate child for its support was held to be good as being a meritorious consideration. So also as to a note given by a seducer to the parent of the girl seduced. (*Cutter* v. *Collins*, 12 Cush. 233; *Harter* v. *Johnson*, 16 Ind. 271; *Merritt* v. *Flemming*, 42 Ala. 234.) In England, agreements in consideration of past cohabitation are enforced (*Gray* v. *Mathias*, 5 Ves. 286; *Gibson* v. *Dickie*, 3 M. & S. 463), though the cases are not uniform as to the necessity for a seal. (*Beaumont* v. *Reeve*, 8 Q. B. 483; *Benyon* v. *Nettlefold*, 3 Mac. & G. 94, 100; *Kyne* v. *Moore*, 1 Sim. & St. 64; *Walker* v. *Perkins*, 3 Burr, 1568; *Smyth* v. *Griffin*, 13 Sim. 245; *Simpson* v. *Lord Howden*, 3 My. & Cr. 97, 102; *Ayerst* v. *Jenkins*, L. R. [16 Eq.] 275, 282; *Batty* v. *Chester*, 5 Beav. 103, 109.)

Even where the illicit connection is resumed and is never broken off, the court will not presume from that fact alone that the real consideration was future as well as past, nor, therefore, treat the deed as invalid. (*Gray* v. *Mathias, supra; Hall* v. *Palmer*, 3 Hare's, 532; *Vallance* v. *Blagden*, 26 Ch. D. 353.)

The ground upon which the declaration was held to be good in *Gibson* v. *Dickie* (*supra*), was that the agreement " was a voluntary compensation by way of maintenance, made to the plaintiff for the injury done her by their past illicit connection; * * * and that so far from it being an inducement to her to continue the cohabitation, it was rather an inducement to separate."

The point that the note if given was not enforcible is, therefore, not well taken.

(2) The next contention is that the testimony of the notary, Townsend, was insufficient to prove that the defendant actually swore to the affidavit before him. It is true that this witness made contradictory statements upon the subject, but these contradictions were satisfactorily explained. A careful perusal of his entire testimony convinces us that he was truthful, and that the defendant did in fact personally appear before him and swear to the affidavit. This at all events was a proper question for the jury, and it was fairly presented to them by the learned court. Nor was it necessary

that the notary should be corroborated. The testimony of a single witness is sufficient to prove that the defendant swore as alleged in the indictment. (See cases cited in 18 Am. & Eng. Ency. of Law, 324, note 1.) It is only the falsity of the statement sworn to which must be substantiated by the oath of two witnesses, or of one witness supported by corroborating and independent circumstances, equivalent in weight to the testimony of a single witness. (Ibid. 323.)

(3) There was ample corroboration of Miss Keating within the rule just stated. She was corroborated, not only by the documents generally, but by a special feature of the note itself. The body of this note was concededly in the handwriting of Mrs. Hayes, but she omitted to write the word "date" in the appropriate place. Miss Keating testified that this word was written by the defendant himself on the occasion when the note was delivered to her. In this she was corroborated by the testimony of two experts in handwriting, who testified that, in their opinion, based upon considerations which were detailed, the word "date" was written by the same person who wrote the signature to the instrument. And the signature "W. B. Hayes," was admittedly in the handwriting of the defendant. Three other witnesses also corroborated Miss Keating as to the defendant's presence in the city of New York at or about the time when she says he gave her the note. One, a physician who attended him for an injury to his foot. Another, a person who resided in the same house with him, and who identified him both personally and with regard to the injured foot. The third, a servant in the defendant's family. This testimony not only corroborated Miss Keating upon the affirmative case, but negatived the weak and unsatisfactory testimony with which the defendant attempted to prove an alibi.

(4) The point is made that the Court of General Sessions had no jurisdiction to try the indictment, for the reason that the civil action is still pending and undetermined. There is nothing in this point. The court certainly had jurisdiction to try the indictment, even if it would have been better to defer such trial until after the conclusion of the civil action. It was not a question of jurisdiction, but of propriety. Moreover, this question was not properly raised below. The defendant did not ask to defer the trial. He proceeded with-

out objection, and without even informing the court of the continued pendency of the civil action. And further, he neither moved to dismiss the indictment upon this ground, nor for an acquittal when the prosecution rested, nor in arrest of judgment, nor for a new trial. The only reference we find to this point in the record is its occasional presentation, seemingly in a most inconsequential way, as an objection to the admission of competent evidence, and a request at the conclusion of the learned judge's charge that he further instruct the jury that they must acquit, because under the law " the court in such a case has no jurisdiction."

The practice in England is to postpone the trial for perjury until the cause out of which it arises is determined. (Wharton Crim. Law [7th ed.], § 2280 ; *Rex* v. *Simmonds*, 1 Carr. & Payne, 84.) In Pennsylvania the rule seems to be that a prosecution for perjury, alleged to have been committed in an affidavit of defense, will not be entertained until after final judgment in the case in which the affidavit is made. (*The Commonwealth* v. *Dickinson*, 3 Penn. Law Journal Report, 163.) In the case cited, however, the affidavit of defense was in the nature of a direct answer in the action. It was not, as here, an affidavit used collaterally upon a motion in the cause — a motion, too, which has been finally disposed of. There, too, the question was brought directly before the court on an application upon habeas corpus to discharge the defendant. All this was before indictment, and while the defendant was subject only to an alderman's preliminary warrant. And although the defendant was released from the custody of his bail and discharged, there is not a suggestion that an indictment — if the prosecution had proceeded so far — would have been quashed. On the contrary, the court referred to the English rule with approval, and declared that the practice in Pennsylvania was *not to suffer an indictment for perjury to be tried* until the proceeding in which it was alleged the offense had been committed had been determined.

We think the English rule is a reasonable one, and that the question of postponement should be left to the sound discretion of the court. The indictment here was good. It could not have been successfully demurred to. And the question of the defendant's guilt or innocence, upon the trial, to which he submitted without

objection, was not affected by the incident of the pendency of the civil action.

That is a complete answer to the only point which on this head is now presented, or which was presented below. If the defendant desired to await the termination of the civil action, he should have made a proper application to that effect before entering upon the trial of the indictment.

(5) The perjury was committed prior to the passage of chapter 662 of the Laws of 1892, amending section 106 of the Penal Code. This amendment changed the penalty previously prescribed for this offense by abolishing the minimum limitation. Prior to the amendment, the penalty read as follows: "By imprisonment for not less than two nor more than ten years." Now it reads: "By imprisonment for a term not exceeding ten years."

It is contended that this amendment, as applicable to perjury committed prior to its enactment, was *ex post facto*.

An *ex post facto* law was defined by Chief Justice MARSHALL to be one which rendered an act punishable in a manner in which it was not punishable when it was committed. (*Fletcher* v. *Peck*, 6 Cranch, 87–138). If, however, the punishment be increased, though the manner of punishment be the same, the law is *ex post facto*. (*Shepherd* v. *The People*, 25 N. Y. 415.) A law which retains the manner of punishment, but simply reduces its extent is not *ex post facto* as to offenses committed before its passage. (*Commonwealth* v. *Wyman*, 12 Cush. 237; *State* v. *Arlin*, 39 N. H. 179, 180.) This doctrine has been repeatedly asserted in this State. In *Shepherd* v. *The People* (*supra*), SUTHERLAND, J., said that "A law, the effect of which is simply to reduce or diminish the punishment with which an act was punishable when committed, cannot be an *ex post facto* law, because it inflicts no new or additional punishment." So, in *Hartung* v. *The People* (22 N. Y. 105), DENIO, J., observed that, in his opinion, "it would be perfectly competent for the Legislature, by a general law, to remit any separable portion of the prescribed penalty. For instance, if the punishment were fine and imprisonment, a law which should dispense with either the fine or the imprisonment might, I think, be lawfully applied to existing offenses, and so, in my opinion, the term of imprisonment might be reduced, or the number of stripes diminished, in cases punishable

in that manner. Anything which, if applied to an individual sentence, would fairly fall within the idea of a remission of a part of the sentence, would not be liable to objection."

And again, on a subsequent appeal in the same case (26 N. Y. 169), the same learned judge stated that the act previously under consideration " was considered to be *ex post facto* because it attempted to change the punishment which the law had attached to the offense of the prisoner when it was committed, *not by remitting some divisible* portion of it, but by altering its kind and character."

This doctrine applies with equal force to an act which simply vests in the courts authority to impose a less penalty than even the existing minimum.

What was said in *Dolan* v. *Thomas* (94 Mass. [12 Allen] 421), is entirely applicable to the act under consideration : " The effect of the statute was merely to vest in the court a discretion by the exercise of which they were authorized to mitigate the sentence to which an offender was liable by dispensing with a portion of the prescribed punishment. The extent of the repeal of previous statutes is then only this, that, in a certain class of cases, instead of a fixed and inflexible rule of punishment, which could not be modified or varied, the court has authority to substitute a milder sentence. Clearly, such a statute is not a violation of any right or privilege of an accused party nor does it render the class of offenses to which it relates, and which were committed prior to its enactment, dispunishable. It does not inflict any greater punishment than was before described ; it is not, therefore, *ex post facto ;* it only authorizes a mitigation of a penalty ; it is, therefore, an act of clemency, which violates no right, but grants a privilege to a convicted party."

(6) A witness for the defense, Noah, admitted upon cross-examination that he made a false certificate as a notary public to the effect that Mrs. Hayes had appeared before him and acknowledged the execution of an instrument purporting to have been executed by her. As matter of fact, Mrs. Hayes had not appeared before him nor acknowledged the execution of the instrument. At the close of his testimony the learned judge directed his committal for the offense thus admitted. The appellant claims that by this action of the court he was prejudiced before the jury.

It was not the action of the court which affected the credibility

of the witness, but his own confession in the presence of the jury that he had committed a peculiarly dangerous crime. If such conduct as the witness acknowledged were to pass without instant condemnation, it would have a most pernicious effect. Titles to real estate, the genuineness of conveyances, the security of mortgages, all depend upon the strict fidelity with which public officers, intrusted by law with the duty of taking acknowledgments, perform their functions. No judge with a proper sense of what he owes to the public should sit supinely by and permit such a confession to be made as though it was a matter of no moment or of every-day occurrence. There was, under the circumstances, but one proper course to pursue, and that was to indicate the exceptionable character of the offense by directing the witness' immediate prosecution. That was better than mere words of rebuke; still better than to permit the guilty officer to leave the court room unchecked and unrebuked. The latter course would have been unworthy of the occasion and would have evinced reprehensible indifference to a matter of great public concern.

It is contended that what Noah confessed did not amount to a crime, because he had no intent to defraud. But the statute does not require an intent to defraud to constitute the crime of forgery in making a false certificate with regard to an acknowledgment. Ordinarily, this intent is required to constitute forgery, but in the case of officers authorized to take the proof or acknowledgment of an instrument which by law may be recorded, all that is required is that he should willfully certify falsely. (Penal Code, § 510.)

The committal of this witness was what the jury must have expected as the fitting sequence to his confession of crime. And it could have had no other effect upon them than a wholesome one. The injury to the defendant, if any, was in the fact confessed, not in the treatment which the confession necessitated.

(7) The order opening the default was dated at a Special Term held on the 29th day of April, 1889. The year "1889" was a clerical error. It should have read "1891." The point is made that the entire record should have been stricken out because of this error. But clearly the order in question was that which was actually made on the decision of the motion. It was brought from the files with the affidavit and notice of motion. The real fact is apparent.

But the order was not essential to the prosecution. The affidavit which was used on the motion was produced from the files, and that was the essential thing. The perjury would have been the same if the decision had been the other way or if there had been no decision. The affidavit was used to affect the decision, and that was sufficient.

(8) Certain letters written by Mrs. Hayes to the defendant were offered in evidence by the prosecution on the cross-examination of Mrs. Hayes. They were objected to by the defendant on the ground that they were privileged communications. These letters were not produced by Mrs. Hayes as evidence against her husband. They were given by the defendant to his mistress before the trial, and were placed in the hands of the district attorney. They thus came into the possession of a third party by the defendant's shameless disregard of marital confidence. He opened the door and exposed the expression of this confidence. He cannot now close the door. It is said by Wharton (§ 767), that the privilege is personal to the parties; a third person who happened to overhear a confidential conversation between husband and wife may be examined as to such conversation. A letter, also, written confidentially by husband to wife is admissible against the husband when brought into court by a third party. (See, also, *State* v. *Hoyt*, 47 Conn. 518; *State* v. *Buffington*, 20 Kan. 599.)

We have thus endeavored to cover the principal points made by the appellant in the elaborate brief of 115 pages which was submitted to us. There are in this brief many other points, but they are trivial, and we do not deem them worthy of special consideration. The charge of the learned judge was eminently fair, and the exceptions thereto are without merit.

Upon the whole, we think the defendant had a fair trial, that he was justly convicted, and that no errors were committed to his prejudice.

The judgment should, therefore, be affirmed.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

*Judgment affirmed.*