(164 App. Div. 119)

PEOPLE v. CRISCUOLI.

(Supreme Court, Appellate Division, Second Department. October 30, 1914.)

1. WEAPONS (§ 8*)—"DANGEROUS KNIFE"—"NICKED RAZOR."

A "nicked razor" is one which has its edge indented after being subjected to heat, and could be within Penal Law (Consol. Laws, c. 40) § 1897, as it was before amended, making it a felony to carry a "dangerous knife," with intent to use it against another, though a razor, fit to use as such, was not, as indicated by the amendment, within such section.

[Ed. Note.—For other cases, see Weapons, Cent. Dig. § 7; Dec. Dig. § 8.*]

2. CRIMINAL LAW (§ 1186*)—APPEAL—REVERSAL—FAIR TRIAL.

Under the authority given the Appellate Division by Code Cr. Proc. § 527, to grant a new trial, if satisfied defendant did not have a fair trial, even though no legal error was committed, it will reverse, where, under the authority given the trial court by Penal Law (Consol. Laws, c. 40) § 1628, it at the trial committed for perjury a witness for defendant, who had not, in the testimony complained of, told an untruth, though the jury, without any suggestion that the court thought it had erred, was told it might believe the witness.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3215–3219, 3221, 3230; Dec. Dig. § 1186.*]

3. PERJURY (§ 12*)—FALSE TESTIMONY.

Even if the matter be material, a witness does not commit perjury in testifying he was not subpœnaed "to-day," when he was subpœnaed for the day before, and merely told to return on the day in question.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 55–61; Dec. Dig. § 12.*]

Appeal from Kings County Court.

Francesco Criscuoli was convicted of carrying a dangerous weapon, and appeals. Reversed, and new trial ordered.

See, also, 157 App. Div. 201, 141 N. Y. Supp. 855.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and PUTNAM, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Edward J. Reilly, of Brooklyn, for appellant.

Harry G. Anderson, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., of Brooklyn, on the brief), for the People.

BURR, J. Defendant was indicted for a violation of section 1897 of the Penal Law, which, on November 21, 1910, the date of the alleged offense, provided that:

"A person who attempts to use against another, or who carries, or possesses any instrument or weapon of the kind commonly known as a slungshot, billy, sandclub or metal knuckles, or who with intent to use the same against another, carries or possesses a dagger, dirk or dangerous knife is guilty of a felony."

[1] We think that the evidence upon the part of the people, if accepted by the jury, was sufficient to justify them in finding that on the date in question defendant had in his possession what is known as a "nicked razor"; that is, a razor which has its edge indented after being subjected to heat, so that it presented a serrated surface. The razor, which one of the witnesses for the people testified that he took from the possession of defendant, removing it from his pocket, and which is an exhibit in the case, was a "nicked razor." Its appearance would indicate, and there was evidence to show, that such an instrument was totally unfit to be used for the normal purpose of a razor, but that it might be used as a weapon, and that a wound inflicted by it was of grievous character, and, if it healed, would leave a ragged and ugly scar.

Upon the people's evidence it could be found to be a dangerous knife within the definition of the statute above cited. Under section 1898 of the Penal Law:

"The possession, by any person other than a public officer, of any of the weapons specified in the last section, concealed or furtively carried on the person, is presumptive evidence of carrying, or concealing, or possessing, with intent to use the same in violation of that section."

Defendant did not deny that he had a razor in his possession on the date named, and that it was taken from him by the police officer who arrested him. He attempted to prove by four witnesses that the razor thus taken was a new razor, purchased by him for use in his trade as a barber, and that it had never been subjected to treatment by fire, and that it had a keen and not a serrated edge. If so, as the statute then read, he was not guilty of the offense charged. People v. Cricuoli, 157 App. Div. 204, 141 N. Y. Supp. 855. Two other witnesses testified to the sale to defendant, two or three hours before his arrest, of a new razor whose edge had not been roughened. The issue of fact thus presented to the jury was a sharp one.

[2, 3] We might not feel called upon to disturb its verdict, if we felt that defendant had been accorded a fair trial. If not, the discretion to grant a new trial, even though no legal error has been committed, pertains to this court. Code of Criminal Procedure, § 527; People v. Hovey, 92 N. Y. 554; People v. Boas, 92 N. Y. 560.

The third witness called for the defense was named Alphonso Ingenito. He was an Italian by birth, and his testimony was given

through an interpreter.   On his direct examination he testified as follows:

"Q. Now, you remember when the two officers came in?  A. Yes, sir.  Q. Did you see razors?  A. Yes, sir.  Q. Who had the razors  A. Two persons. Q. Who were the two persons?  A. This defendant and the man that walked in here a minute ago.  Q. Did you see those two razors?  A. Yes, sir.  Q. What was the condition of those razors when you saw them?  A. I saw two razors being taken out of the pockets.  Q. What was the condition—were they good, bad, or what?  A. They took the razors out of their pockets.  They put them up against the light, and they were entire; the blade was not broken up. Q. Did you see the razors with your own eyes?  A. Yes, sir.  Q. I now show you a razor (handing People's Exhibit 1 to the witness).  Did you see the razor on that night?  Can you recognize the razor?  A. The only thing I know was that the razor was brand new; the blade was not broken.  Q. Is this the condition that you saw the razor in that night?  A. No, sir; the razor was brand new.  Q. What do you mean by brand new?  A. It was new; it had not been used.  Q. Well, was it perfect?  A. It was perfect—new.  Q. Was it nicked or cut, or in that condition?  A. No, sir."

On cross-examination he was first asked whether on the previous trial of defendant, on December 6, 1912, he testified in his behalf, and he answered that he did not.   When asked to explain his presence on this trial he testified:

"I came of my free will and accord, because I was present that night.  Q. Why didn't you come of your own free will and accord on December 5 ᶠsic], 1912, when he faced another jury?  A. Because I was not subpœnaed.  Q. Were you subpœnaed to-day?  A. No, sir."

On redirect examination he was asked:

"Q. You were subpœnaed yesterday, weren't you?  A. Yes, sir.  Q. And you were told to come back here this morning, weren't you?  A. Yes, sir."

The court then interrogated the witness as follows:

"Q. Didn't you just say you were not subpœnaed to come here to-day?  A. The first time I did not, but yesterday I did receive a subpœna.  Q. Didn't you say a few moments ago you were not subpœnaed to come here to-day?  A. The first time.  The Court: Read it.  (The following questions and answers read by the stenographer: 'Why didn't you come of your free will and accord on December 5, 1912, when he faced another jury?  A. Because I was not subpœnaed.  Q. Were you subpœnaed to-day?  A. No, sir.')"

The court then resumed interrogating the witness:

"By the Court:  Q. You just said here a little while ago that you were not subpœnaed to come here to-day?  A. Yes.  Q. Why didn't you say you were subpœnaed yesterday—  A. We don't understand.  I said I did not receive any subpœna four years ago.  Q. You said you were not subpœnaed here yesterday for this trial, didn't you?  A. Yes; I received it yesterday.  Q. You did receive a subpœna yesterday, did you?  A. Yes, sir.  The Court: I think that is perjury.  Take him in custody."

The witness was then removed by a court officer and taken into custody.   At that time the Penal Law provided that:

"Where it appears probable to a court of record that a person, who, has testified before it in an action or proceeding in that court, has committed perjury in any testimony so given, the court may immediately commit him, by an order or process for that purpose, to prison, or take a recognizance, with sureties, for his appearing and answering to an indictment for perjury."  Penal Law, § 1628.

To constitute the crime of perjury, the witness, having been sworn to truly testify, must have willfully and knowingly testified falsely in some material matter, or stated in his testimony some material matter to be true which he knows to be false. Penal Law, § 1620. In the case at bar we fail to see that the witness did commit perjury. Upon his cross-examination he was only asked whether he had been subpœnaed for the day upon which he was testifying, and he replied that he had not. Upon his redirect examination he testified that he had been subpœnaed for the preceding day and told to return on the day in question. So far as appears, each of these statements were literally true. He had been subpœnaed to attend on the preceding day, and had then been notified, without further subpœna, to attend on the day in question. The learned county judge seems to have assumed that he had testified that he was never subpœnaed. In this he erred as to the fact.

Even though the witness had committed perjury, and although his summary commitment by the trial judge was within both his power and discretion, so that his action in that regard presented no legal error, we desire to place ourselves upon record as expressing the opinion that this power should rarely, if ever, be exercised in the presence of the jury. As a rule, the necessity does not exist for this drastic treatment. The witness may be detained in court until the jury has retired, before the judicial rebuke is administered. Experience has taught us that the average juryman is peculiarly susceptible to any expression of the presiding judge as to the facts of a case. The case of People v. Hayes, 70 Hun, 111, 119, 24 N. Y. Supp. 200, affirmed 140 N. Y. 494, 35 N. E. 951, 23 L. R. A. 830, 37 Am. St. Rep. 572, probably being the case to which the court intended to refer as the case of People v. Hughes, and relied upon by the learned district attorney, is essentially different in its facts. In that case, as appears from the opinion of the General Term, a witness for the defense admitted upon cross-examination that he had made a false certificate as a notary public, to the effect that a certain person named therein had appeared before him and acknowledged the execution of an instrument purporting to have been executed by her, when as matter of fact she had never done so. This, as the court pointed out, constituted the crime of forgery. Penal Code, § 510. At the close of his testimony, the learned judge directed his committal for the offense thus admitted, and the appellant claimed that by this action of the court he was prejudiced before the jury. In the opinion at General Term Mr. Justice Barrett said:

"It was not the action of the court which affected the credibility of the witness, but his own confession in the presence of the jury that he had committed a peculiarly dangerous crime... * * * The committal of this witness was what the jury must have expected as the fitting sequence to his confession of crime. And it could have had no other effect upon them than a wholesome one. The injury to the defendant, if any, was in the fact confessed, not in the treatment which the confession necessitated."

If the witness had committed the crime of perjury, the impression upon the jury caused by his summary commitment therefor is not removed as a rule by general instructions in the charge, even though the court did say:

"You will therefore carefully review all the testimony, and you will not be prejudiced by the episode that occurred during the trial, wherein the court acted as the court felt it should, and, as I have already in that very instance told you, you have a right to believe every single word that that witness said, should you so desire."

The reference to his preceding instruction occurred in the course of a colloquy between the judge and the defendant's counsel, in which counsel first asked the court to direct a mistrial, and then to permit him to withdraw from the case because of the prejudice arising from the court's summary action. On that occasion, after reiterating in the presence of the jury that the witness, in the opinion of the court, had committed perjury, the county judge added:

"I would say to the jury now that they are not to condemn, should they have that consideration placed before them, this defendant for any perjury that the court might deem to have been committed here in their presence. They could take into consideration the witness' demeanor, and you, gentlemen of the jury, as the judges of the facts and of those that furnish you with the facts, namely, these witnesses, have it within your power, indeed, to overrule the court in that regard, and to take every single word of those witnesses as being absolutely true, and it would be your right to do so if you felt, after examining their testimony and watching them upon the stand, that they were telling you the truth, and, in your judgment, should be believed."

The sting of the court's condemnation was not thereby withdrawn. There was no suggestion that the court thought it had erred, and the jury were left under the influence of its expression of opinion. If, under any circumstances, a summary commitment for perjury committed on a trial is unwise, much more when, as in this case, as we have pointed out, the learned judge was mistaken as to the fact that the witness had testified falsely. In this discussion we have assumed that testimony as to whether or no a witness had been subpœnaed is a fact "material to the issue." Because it is unnecessary, we do not now decide that question. The presumption of innocence, which Anglo-Saxon law and our own jurisprudence throws around the guiltiest criminal, is not overcome until the defendant has had a fair trial. Defendant's guilt may be of the deepest dye. The fair trial to which he is entitled has not been accorded him.

The judgment of conviction of the County Court of Kings County must be reversed, and a new trial ordered. All concur.