# SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

## April 5, 1919.

## THE PEOPLE v. PHILIP FRASCO.

(187 App. Div. 299.)

ASSAULT—TRIAL—REMARKS BY TRIAL JUSTICE CONSTITUTING REVERSIBLE ERROR.

Upon the trial of a defendant for an assault, it is reversible error for the trial court at the conclusion of a day's session, but after the dismissal and retirement of the jurors from the court room, in the course of his remarks accusing a leading witness for the defendant of perjury, to state that the defendant will be convicted on the testimony of said witness alone, if nothing else, especially where the jury were not admonished not to permit anyone to speak to them or in their presence about the case or the trial.

PUTNAM, J., and JENKS, P. J., dissented, with opinion.

APPEAL by the defendant, Philip Frasco, from a judgment of the County Court of Kings county, rendered against him on the 16th day of May, 1918, convicting him of the crime of assault in the second degree as a second offense.

*Peter J. Brancato,* for the appellant.

*John E. Ruston, Assistant District Attorney (Harry E. Lewis, District Attorney,* with him on the brief), for the respondent.

MILLS, J.:

This is an appeal by the defendant from a judgment of the County Court of Kings county convicting the defendant of the crime of assault in the second degree as a second offense, and

sentencing him to imprisonment in the State prison under an indeterminate sentence, the maximum thereof being five years and the minimum two years and six months, upon a verdict of guilty rendered at a trial term of said court, May 17, 1918.

The testimony of the complaining witness was clear and positive to the effect that the defendant committed upon her the assault charged in the indictment, and was to the following effect: She was nineteen years of age, and on Good Friday, March 29, 1918, was working as a governess in charge of three children, at No. 6222 New Utrecht avenue, Brooklyn. The defendant, a young man (age not appearing), a few days before the assault saw her upon the street as she was going to or from the grocery store and scraped acquaintance with her and invited her to go with him to a show, which invitation she accepted, as she contends, to get rid of him, but she did not keep the appointment. Later he persisted in forcing his attentions upon her while she was upon the street and even attempted to kiss her in the hallway until she complained of him to a policeman, who, in her presence, told him to leave her alone. When he, upon that occasion, told the officer that she had been willing (to receive his attentions), she said, in his presence, " I was not willing to have a dirty Guinea against me." At about one-thirty P. M., on March twenty-ninth last, Good Friday, there came a knock on the door and she went to the door, saw the defendant there and he at once struck her over the head with something like a pipe, inflicting quite serious injuries upon her. From her story it appears that she had had an unfortunate experience, in that some two years before she had given birth to an illegitimate child, and from her testimony it looks as though the defendant, very likely aware of that fact, deliberately laid siege to her, and that when she refused him with scorn, he became enraged and determined to be revenged upon her and so committed the assault.

Defendant, testifying in his own behalf, denied that he com-

mitted the assault and gave a detailed narrative of his movements upon that day, which, if correct, established an alibi in his favor. His cross-examination was very complete, but revealed no other prior criminal conviction than the assault in the third degree charged in the indictment as a prior offense. In his behalf five other witnesses testified corroborating him as to the alibi. The testimony of three of them so corroborating him did so quite directly. The gist of their and his story to that effect was that they were riding about town in an automobile, stopping at various places, at and for some hours before and after the time of the alleged assault.

Appellant's counsel practically admits, in his points, that the evidence presented a sharp issue of fact, which the jury, within their fair province, might decide either way as they might be convinced. He rests the appeal upon the claim that the learned trial judge committed errors exceedingly prejudicial to the defendant, so that he did not have a fair trial.

Appellant's main contention here is that divers acts and remarks of the trial judge were prejudicial to the defendant, so much so as to constitute reversible error. The instances cited in support of that contention are: (a) A certain cross-examination by the judge of Accurso, one of the leading alibi witnesses for the defendant; (b) the action of the judge in practically committing that witness to the custody of a court officer, wherein it is claimed by appellant he was kept until the close of the day's session; and (c) the action of the judge at the close of that session in delivering a denunciation of that witness in open court, and in denying the motion, made by defendant's counsel at the resumption of the trial on the following morning, for a mistrial upon the ground of that denunciation.

As to the first of those specifications, I think that the cross-examination by the judge, referred to, did not constitute reversible error. The record shows that the judge did not indulge much in questioning witnesses and that that instance was excep-

tional. The only thing about it subject to criticism was his suppression of defendant's counsel when he attempted to interpose an objection to the judge's line of inquiry, viz.: "Mr. Brancato: I don't want to interrupt your Honor's question — The Court: Overruled. Counsel will resume his seat." The judge should have listened to counsel's objection and ruled upon it without reprimand, express or implied. If the record showed repeated instances of such action I would regard it as amounting to reversible error, but the instance seems to be a solitary one. From the brief of appellant's counsel it appears that the objection which counsel wished to present was that it was improper upon cross-examination to ask the witness, in effect, if he did not know or suspect that the automobile tires, which it was claimed for the defendant the party was trying to sell, had been stolen. I think that such a line of interrogation was entirely proper upon cross-examination, so as to affect the credibility of the witness.

As to the second specification of error above stated, viz., the practical arrest of the witness at the conclusion of his testimony, in the very presence of the jury, the incident comes very close to the action of the trial judge in a prior case, which was in 1914 condemned by this court and by it held ground for reversal in People v. Criscuoli (164 App. Div. 119, 123). Indeed the learned counsel for the respondent here, in his brief, intimates that the trial judge in his action in this case had in mind our such prior decision and steered his way clear of our condemnation therein expressed. If he did so, he did it by a very narrow margin. In that case the record was that at the close of the witness' testimony the judge said: "I think that is perjury. * * * Take him in custody," and the witness was then removed by a court officer and taken into custody. (164 App. Div. 122.) In the instant case the judge's remark in the like situation was: "The Court: (To the witness) Step in there (indicating the jury room); " and the record at the close of that

day's session is: "The Court: Let Accurso be *brought out.* Ralph Accurso is *brought* before the court." (Italics mine.) The learned counsel for the appellant argues that the fair inference from the record is that the witness was at once taken into custody by a court officer and held in such custody in the jury room until the end of the session, and then, at the command of the judge, brought before the court by the officer. It seems to me that all that is to be inferred from the record, and especially from the use of the word "brought." The effect of that scene upon the jury, that is, of the committal part of it, can better be imagined than described. The opinion of this court, written by the late Mr. Justice BURR in the case cited, respecting the practice of committing a witness in the very presence of the jury, said: "The witness may be *detained* in court until the jury has retired before the judicial rebuke is administered. Experience has taught us that the average juryman is peculiarly susceptible to any expression of the presiding judge as to the facts of a case" (164 App. Div. 123 — italics mine); and the learned counsel for the respondent argues that all the judge did in the instant case was to *detain* the witness in court until the jury had retired. I do not think that that expression in that opinion meant that such detention should be made by the oral direction of the judge uttered in the very presence of the jury. To my mind the evil designed to be guarded against by the expression was the taking of the action before the jury, so that the jurors would know that the judge had condemned the witness or pronounced him guilty of perjury, and it seems to me that any intelligent juror would at once place that construction upon the practical committal in this case. It is difficult to suggest any other reason which an intelligent juror could assign for that judicial action. Possibly, in view of the said cross-examination of the witness by the judge, a juror might have thought that that action meant that the judge deemed the witness guilty of being a participant

in the theft of the tires or in the selling of them after they had been stolen, a conclusion equally destructive of the witness' credibility. I have carefully read the testimony of the witness and see nothing in it that warranted such summary action or reflection on the part of the judge. He was one of the three principal witnesses who corroborated the defendant in his testimony to establish an alibi. I do not perceive that his testimony was, upon its face, incredible, or that it was successfully shaken by cross-examination. Indeed, the case appears to me to have presented nothing but the very ordinary conflict of witnesses in a criminal case upon the subject of alibi.

As to the third specification, namely, the extreme denunciation addressed by the trial judge to the witness, in open court, at the conclusion of the day's session but after the judge had dismissed the jurors and they had retired from the court room, it may well be said that those remarks of the judge were most extraordinary, viz.: " Mr. District Attorney, how can we hold this man for perjury so that he can go on his way to Sing Sing ? I am sick and tired of the thugs like that that are entrusted with taxicabs. God help the poor fare that goes into a taxicab operated by a man like that. He would rob him or do anything to him. He is the perfect type of the taxicab robbers of Greater New York that are worse than all the thieves of Europe. Is there any way that we can hold this man for perjury so that I can send the case to the grand jury so that he can be held and indicted for perjury ? His testimony is a tissue of lies. The defendant will be convicted on his testimony alone, if nothing else, and I hope that you will never see the light of day except behind bars in Sing Sing prison." It is plain from the record that the learned district attorney saw no justification for the judge's statement. This much is to be inferred from his response, " We are up against this proposition, your Honor. We have the testimony of one witness against another, and you know the rule." If the trial judge deemed it proper to ask the opinion

of the district attorney as to whether the situation warranted him in holding the witness for prosecution for perjury, there was not the least need or propriety in his so consulting the district attorney publicly. The greatest vice of the statement, however, was in its unqualified declaration that "The defendant will be convicted on his (meaning Accurso's) testimony alone, if nothing else." If that declaration had been made in the presence of the jury, of course it would have been reversible error of the clearest sort. The jurors, however, had left the court room, but even by command of the judge every one else still remained. The question now is: Did that action upon the part of the judge constitute reversible error? I think that by every consideration of justice and fairness we are bound to hold that it did. The admonition of the judge to the jurors on dismissing them was merely "not to discuss the case during the interim of the adjournment, * * * and have no conference with anybody about the case in any way," which was, at the best, a scant compliance with the statutory requirement of section 415 of the Code of Criminal Procedure. They were not admonished not to permit any one to speak to them or in their presence about the case or the trial. Our experience as trial judges admonishes us that it is very unlikely that some of the jurors did not in some way, before the resumption of the trial the following morning, hear of that most extraordinary happening in the court after they left the court room, but while every one else, even by command of the judge, still remained. If no inkling of that affair in any way penetrated the intelligence of those jurors, it was, as human nature goes, little less than miraculous.

Moreover, I think that it is the duty of the trial judge, at least upon the vital issue in the case where there is evidence *pro* and *con,* to hold his mind open until after he has listened to the summation of counsel. According to general practice a verdict of guilty is followed, as it was in this case, by the motion for a new trial upon the ground that it is contrary to the evidence or

to the weight thereof, so that the judge will in the end be required to pass even upon the weight of the evidence and determine whether or not each element of the crime charged has been established beyond a reasonable doubt. The practice is in most cases for brief argument to be made upon such motion, with the reliance that the court has heard and considered the arguments upon the facts, which counsel addressed to the jury. This record convinces me that the learned trial judge must have listened to the arguments of counsel in this case with closed mind; as he had already in his own mind convicted the defendant beyond the possibility of question and made that conviction public by declaration in open court. I think that that judicial status was inconsistent with a fair trial. It is most regrettable that we are in this case forced to this conclusion, because it is very likely true that the defendant was guilty of the assault charged against him, which under the circumstances testified to by the girl, the complaining witness, was extremely base and atrocious, and very likely the jury would have implicitly believed her story against the testimony of the defendant and his friends to establish an alibi, without any exhibition on the part of the trial court. Still it was the constitutional right of the defendant, however base we may think him to be, to have a fair trial. It would, I think, be a dangerous precedent if this action by the trial judge could stand approved by this court. Such an attack upon a leading witness for the defendant in a criminal case, made by the trial **judge in open court before the evidence has been formally closed,** would be very likely to terrify even a truthful witness, if not of strong character, into a recantation or a weakening of his testimony. Moreover, such an extreme denunciation by the trial judge of the defense, pronounced in open court at what proved to be practically the close of the evidence, would be very likely to greatly embarrass defendant's counsel in his summation before the jury. He would be thus forced to sum up the case under the trial judge's open declaration that defendant's guilt

had been proven and even that the jury would convict him. If in a record before us it appeared that counsel during the progres of the trial, even in the corridor outside of the court room, had assailed an opposing witness with like verbal denunciation and threats, I am sure that we would condemn such action. Here the thing was done in open court by the trial judge himself. Moreover, immediately after the comment above quoted, the trial judge practically charged the police to hold the witness under surveillance. " The Court (To Officer Blake) : Do you know where you can get this man whenever you want him ? Officer Blake: I do, your Honor. The Court: Sooner or later he will be in this Court and the sooner the better for this community. You may go, and return at 10 o'clock to-morrow." No doubt the story of the girl, with her apparently truthful and engaging manner, which is indicated even by the printed record, naturally aroused the indigation of the trial judge against the defendant, and we are not insensible to the same sentiment, but judicial **propriety demanded that he should not** manifest that feeling in open court during any part of the trial.

I am convinced that because of the conduct of the trial judge in reference to the witness Accurso as above reviewed " justice **requires a new trial** " within the fair meaning of section 527 of the Code of Criminal Procedure defining our power and duty in that regard.

The record presents also a substantial legal error in the reception of evidence to the great prejudice of the defendant, although the same was received without defendant's counsel having made definite objection. A detective sergeant in the police force, as a witness for the People, testified that on the day after the assault and after the defendant had been arrested, he took him to the Kings County Hospital, where the complainant lay in bed with her head bandaged, and that he let her look at the defendant and asked her if she had seen him before, and she said " Yes," that he was the man who had assaulted her. De-

fendant's counsel did not object, but upon cross-examination of the witness elicited the fact that when the girl made the statement, defendant was standing at some little distance, " About ten feet from the door leading to the room." Thereupon he moved to strike out the evidence upon the ground that the girl's statement was not made in defendant's hearing, and excepted to the denial of his motion. Apparently he took the view that if the defendant did hear the statement, then the statement was competent evidence. It is, however, well established that even if the defendant did hear it, which view I think the jury might take from the circumstances, still the evidence of what the girl said was incomptent. Aside from the attitude of the defendant, namely, the admission expressly or by silence when he should have spoken, the evidence, as corroborating the complaining witness, was clearly incompetent. (People v. Jung Hing, 212 N. Y. 393, 401; People v. Seppi, 221 id. 62, 69; People v. Cunneen, 184 App. Div. 575.) As an admission by defendant's words or actions of the truth of the girl's statement, " that's the man," the evidence was also incompetent. Viewing it most unfavorably to the defendant it amounted to this, that the defendant declined to say anything, viz.: " He just shrugged his shoulders, that's all."

In People v. Conrow (200 N. Y. 356) it was held that where the defendant, under very like circumstances, refused to say anything, viz.: " I won't say " (at p. 365), the evidence of what the alleged accomplice, who had turned State's evidence, said in his presence was incompetent, although the accomplice then and there called upon him to deny or correct if what he said was not true. In the instant case the defendant by action refused to speak, and also he was under arrest, in the actual custody of the police officer, and not a free agent. Moreover, no inquiry or appeal to him for statement was made by either the girl or the officer. Indeed, the officer had before, but not in the presence of the girl, asked him if he had committed the assault,

and for aught that appears he had already denied to the officer that he had committed it. That seems to be the fair inference, because if he had admitted such fact to the officer, it is inconceivable that the learned and experienced district attorney did not prove that admission. The error in receiving that testimony, in view of its character as very damaging to the defendant, is so manifest as to require a new trial upon that ground alone. ( People v. Visiconti, 182 App. Div. 894.)

I advise, therefore, that the judgment of the County Court of Kings county be reversed and a new trial ordered in said court, for errors of law and because justice requires a new trial.

BLACKMAR, J., concurred on the ground that the remarks made by the court to the witness were made in the presence of the defendant and of his counsel during the trial, and tended to produce a moral duress which prejudiced the defendant in the continuance of the trial, with whom KELLY, J., concurred; PUTNAM, J., read for affirmance, with whom JENKS, P. J., concurred.

PUTNAM, J. (dissenting):

The court's action in detaining the defendant's witness Accurso was proper. He was not rebuked until after the jury had retired. This court has laid down the procedure in such a case: " The witness may be detained in court until the jury has retired before the judicial rebuke is administered." (People v. Criscuoli, 164 App. Div. 119 123, 32 N. Y. Crim. 172.) I see no error in first telling the witness to step into a side room, since announcing a direction to hold him in the court room might become more noticeable to the jury. The jury subsequently retired. The court directed that the others should not leave the court room. After the jury's retirement he spoke freely and with unreserve, such as might occur in course of an

argument over the admissability of testimony had in the jury's absence.

Any remarks thus made to  the district attorney cannot be held to affect the verdict, unless this court is to go far beyond precedent in criminal appeals.  Can we assume misbehavior by the jury and by the court officer?  After such adjournment is it to be presumed that the jury not only violated the court's directions which so far as outside influences are concerned complied fully with Code of Criminal Procedure, section 415, and then infer that Officer Wellwood, in charge of them, was guilty of breach of his sworn duty as their custodian, under Code of Criminal Procedure, sections 414 and 421?  Only on such suppositions, barren of the slightest support, can we say that the court's animadversions reached and influenced the jury.  The testimony that the day following this assault defendant was recognized by the woman assaulted was received without objection.  I think it was within our ruling in People v. Keller (186 App. Div. 534).

Where the record shows no good exception to any ruling or instructions during the whole trial, and where the People's evidence was met by a weak alibi, I cannot reverse a conviction because of the court's outspoken remarks about a witness, made after the jury's retirement from the court room.

JENKS, P. J., concurred.

Judgment of conviction of the County Court of Kings county reversed, and new trial ordered.