THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JAMES EGAN, Appellant.

First Department, December 7, 1934.

*Joseph Lonardo,* for the appellant.

*Vincent A. Catoggio, Jr., Deputy Assistant District Attorney,* of counsel [*William Copeland Dodge, District Attorney*], for the respondent.

MARTIN, J.   The appellant, James Egan, and a man named
George Whitney were arrested on April 29, 1933, charged with the
crime of burglary in the third degree.   On July 27, 1933, Egan
was convicted as a second offender and sentenced to a State prison
for a term of ten years.   An incident occurred during the trial
which appellant contends requires a reversal of the judgment of
conviction.

Frank Trapani, the arresting officer, testified that at about
four-forty-five o'clock in the morning on the day of the arrest
he observed the appellant and Whitney acting suspiciously; he
watched them for about half an hour and then heard a crash of
glass and found a window broken in a haberdashery store at No.
2998 Broadway, New York city.   He found the appellant and
Whitney in the doorway of the premises with certain property
" in their possession."   The officer questioned them about the
broken window and the appellant admitted he had broken it with
a saltshaker, part of which was found in the street.   At the trial
the officer produced two top coats, two shirts, shoes and a hat
which he found in the possession of the appellant and Whitney
the morning of the arrest.

During his direct examination the arresting officer admitted
that he had given a different version of the affair at the hearing
in the Magistrate's Court.   He says he did so because he was sick
at the time of the hearing in that court, suffering from a high
fever and the grippe and was under the care of his doctor.   He
said his " mind was not just right " when he answered the questions.
The conflict in the testimony concerned a statement made in the
Magistrate's Court by the arresting officer that the appellant denied
breaking the window and his statement upon the trial in General
Sessions that he admitted breaking the window.   In the Magis-
trate's Court the officer stated that none of the property was on
the person of the defendants but was lying on the ground in the
doorway; upon the trial in General Sessions the officer said that
the property was in the possesion of the defendants.

The trial judge questioned the officer about his illness and the
discrepancies in his testimony and then ordered that his testimony
in  the Magistrate's Court be read.   He then ordered that a
Detective Walsh, who was present when the complaint was pre-
pared in the Magistrate's Court, be sent for to testify.   The court
then asked Officer Trapani which story was true, and the witness
answered that the one he was then telling was true; that the
appellant admitted breaking the window and that the property was
in the possession of the men whom he arrested.

Because of the conflicting testimony of the officer on the trial
and in the Magistrate's. Court, relating to the  alleged confession

of the appellant, the judge committed the witness for perjury. The case was then adjourned to the following day because the trial justice stated he did not feel justified in submitting the case to the jury without further evidence from the other police officers. On the adjourned day the People failed to produce Detective Walsh and his absence was not explained. Officer Cotter testified that he was present when the appellant was fingerprinted and had a conversation with him in which Egan said he broke the window and took the articles of wearing apparel. Upon cross-examination the officer said that the appearance of the appellant had changed in that he had a moustache when in the General Sessions and had none when he appeared in the Magistrate's Court and at the time of his arrest. The fingerprints and handwriting of the appellant were produced to show that the appellant was the same man who admitted his guilt to Officer Cotter.

The appellant now urges that his conviction be reversed because he was deprived of a fair trial; that it was especially prejudicial to his case for the court to commit Officer Trapani for perjury in the presence of the jury and that many errors were committed in the charge to the jury, particularly concerning the motives of Officer Cotter in testifying as he did and the statement that there had been a concession that burglary and a breaking and entering had resulted.

The People contend that the evidence was sufficient to submit the case to the jury; that the conviction was inevitable when the testimony adduced upon the trial is considered; that no error was committed by the court in committing a witness for perjury in the presence of the jury and that no errors were committed which warrant a reversal of the judgment.

The commitment of the officer for perjury in the presence of the jury was probably unwise. In addition, there was an unnecessary and protracted discussion between the court and the officer. The fact that the court charged the jurors that it was for them to say which of the two stories told by Officer Trapani was true appears to have wholly corrected the prejudicial situation created by the court. The courts have frequently disapproved of the practice here followed and it should not be resorted to by a trial justice whose task it is to safeguard the rights of the defendant and prevent an unfair trial.

In *People* v. *Criscuoli* (164 App. Div. 119, at p. 123) the court said: " Even though the witness had committed perjury, and although his summary commitment by the trial judge was within both his power and discretion, so that his action in that regard presented no legal error, we desire to place ourselves upon record

as expressing the opinion that this power should rarely if ever be exercised in the presence of the jury. As a rule, the necessity does not exist for this drastic treatment. The witness may be detained in court until the jury has retired before the judicial rebuke is administered. Experience has taught us that the average juryman is peculiarly susceptible to any expression of the presiding judge as to the facts of a case."

In *People* v. *Frasco* (187 App. Div. 299) the law was stated as follows: " As to the second specification of error above stated, viz., the practical arrest of the witness at the conclusion of his testimony, in the very presence of the jury, the incident comes very close to the action of the trial judge in a prior case, which was in 1914 condemned by this court and by it held ground for reversal in *People* v. *Criscuoli* (164 App. Div. 119, 123). Indeed the learned counsel for the respondent here, in his brief, intimates that the trial judge in his action in this case had in mind our such prior decision and steered his way clear of our condemnation therein expressed. If he did so, he did it by a very narrow margin. * * * The learned counsel for the appellant argues that the fair inference from the record is that the witness was at once taken into custody by a court officer and held in such custody in the jury room until the end of the session, and then, at the command of the judge, brought before the court by the officer. It seems to me that all that is to be inferred from the record, and especially from the use of the word ' brought.' The effect of that scene upon the jury, that is, of the committal part of it, can better be imagined than described."

The court then cited part of the opinion in the case of *People* v. *Criscuoli* (*supra*) and said: " I do not think that that expression in that opinion meant that such detention should be made by the oral direction of the judge uttered in the very presence of the jury. To my mind the evil designed to be guarded against by the expression was the taking of the action before the jury, so that the jurors would know that the judge had condemned the witness or pronounced him guilty of perjury, and it seems to me that any intelligent juror would at once place that construction upon the practical committal in this case. It is difficult to suggest any other reason which an intelligent juror could assign for that judicial action."

The prosecution argues that the action of the trial judge inured to the benefit of the defendant and not to his disadvantage. That may be true in this particular case. For that reason and because of the overwhelming testimony establishing the guilt of the appellant the incident may be overlooked and the conviction affirmed. (See *People* v. *Hayes*, 140 N. Y. 484, 497; *People* v. *Ferola*, 215 id.

285, 292; *People* v. *Vogelgesang,* 221 id. 290, 294· *People* v. *Sarzano,* 212 id. 231; *People* v. *Trybus,* 219 id. 18, 23.)

Although such conduct has frequently been criticised by appellate courts, it has not at all times been held a ground for reversal. (See *People* v. *Hayes, supra; People* v. *Carlsonakas,* 241 App. Div. 232; affd., 265 N. Y. 565.) There is no necessity for a trial judge committing a witness during the trial. Such a witness may be very discreetly dealt with after the trial.

On several recent occasions we have been required to call attention to the fact that the best way to accomplish just results for both a defendant and the People is to follow the practice set forth in many well-considered cases which have stood the test of time and have established wise rules governing the trial of actions, the application of which will insure a fair trial for a defendant and bring about a proper respect for the administration of the criminal law.

In this particular case no injustice having resulted the judgment of conviction should be affirmed, the guilt of the defendant having been established beyond any reasonable doubt.

FINCH, P. J., O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Judgment affirmed