[No. 5305–1. Division One. April 27, 1978.]

THE STATE OF WASHINGTON, *Appellant,* v. ERNEST L. OLSON, *Respondent.*

*Robert E. Schillberg, Prosecuting Attorney,* and *Don Hale, Deputy,* for appellant.

*Luvera & Mullen* and *G. E. Mullen,* for respondent.

RINGOLD, J.—Ernest Olson was tried in Snohomish County Superior Court on a charge of first–degree perjury. At the close of the State's case–in–chief, Olson challenged the sufficiency of the evidence. The court granted his motion and entered an order of dismissal. The State appeals.

A challenge to the sufficiency of the evidence, or a motion having that effect, admits the truth of the evidence of the party against whom the challenge or motion is made, and all inferences that may reasonably be drawn from such evidence, and requires that the evidence be interpreted most strongly against the challenger or moving party and in the light most favorable to the opposing party. *State v. White,* 16 Wn. App. 315, 556 P.2d 255 (1976); *State v. McDaniels,* 30 Wn.2d 76, 190 P.2d 705 (1948). We will review the record before us in this light.

The Spane Building Company is located in Stanwood, Snohomish County. It does general contracting work in the construction business. As part of its operations, Spane maintains a lumberyard on the premises. It operates a machine called an edger for sawing large timbers, and also has several saws used in the manufacture of wooden trusses for the framing of new construction.

Spane is apparently known by many names. Among them are "Spane Buildings", "Spane Builder", "Spane Construction", "Spane Farm Builders", "Spane Pole Barns", "Spane Pole Builders", "Spane", and viewing the evidence most favorably to the State, "Spane Mill".

Ernest Olson has been a resident of Stanwood for some 12 years, and was employed by Spane for approximately a year around 1970. Later, while working for Snohomish County on the "bridge crew", Olson delivered bridge timbers to the Spane Building Company.

Olson was subpoenaed to appear on July 15, 1976, before a Snohomish County grand jury investigating unauthorized disposal of county property. He testified, in part, as follows:

Q. Did you ever have occasion to take bridge timbers from the District Three yard to the Spane Mill?
A. No, I did not.
Q. To the best of your knowledge did anyone working on the bridge crew take timbers to the Spane Mill?
A. Not that I know of.
Q. Were you ever aware of any employees of the Spane Mill Company coming to the District Three lot to pick up bridge timbers?
A. No.

Based on these statements, Olson was indicted for perjury. The State limits its appeal to his negative answer to the question, "Did you ever have occasion to take bridge timbers from the District Three yard to the Spane Mill?" Olson bases his defense on the discrepancy between the questioner's reference to the "Spane Mill", and the proper name of the business.

A person is guilty of perjury in the first degree if he knowingly makes a materially false statement in an official

proceeding while under oath. RCW 9A.72.020(1). It is undisputed that Olson's statement was material, and that it .was made under oath in an official proceeding. The State argues that there was sufficient evidence that Olson's statement was false, and that he knew it to be so, to warrant submitting the case to the jury.

 The quantum of proof in perjury cases is the highest known to the law, excepting only treason. *State v. Buchanan,* 79 Wn.2d 740, 489 P.2d 744 (1971). It is well established that in order to convict of perjury the State must present: (1) The testimony of at least one credible witness which is positive and directly contradictory of the defendant's oath; and (2) another such direct witness or independent evidence of corroborating circumstances of such a character as clearly to turn the scale and overcome the oath of the defendant and the legal presumption of his innocence. *State v. Buchanan, supra* at 744; *State v. Wallis,* 50 Wn.2d 350, 311 P.2d 659 (1957); *State v. Rutledge,* 37 Wash. 523, 79 P. 1123 (1905).

The trial court believed that there was not sufficient evidence that Olson's answer was false. Olson argues that even assuming the answer was false there was insufficient evidence that he had knowledge of the falsity of his answer. These two related issues will be discussed separately.

> *Was there sufficient evidence that the answer was false?*

The State contends that Olson's admission, and the testimony of two eyewitnesses that he took timbers to Spane, establishes the falsity of his statement under *State v. Buchanan, supra.* Olson argues that he took timbers to the Spane Building Company, not the Spane Mill, and that he cannot be convicted of perjury for making a literally true statement.

 Our courts have not considered the issue of the literally true answer. The general rule in other jurisdictions is that there is no perjury if the witness' statement is literally true or technically accurate. *See* Annot., 69 A.L.R.3d 993

(1976), and cases cited therein. The leading case in this area is *Bronston v. United States,* 409 U.S. 352, 34 L. Ed. 2d 568, 93 S. Ct. 595 (1973).[1]

The Supreme Court held in *Bronston* that the federal perjury statute could not be invoked

> simply because a wily witness succeeds in derailing the questioner—so long as the witness speaks the literal truth. The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry.

*Bronston v. United States, supra* at 360.

The court discussed its reasoning at some length:

> Under the pressures and tensions of interrogation, it is not uncommon for the most earnest witnesses to give answers that are not entirely responsive. Sometimes the witness does not understand the question, or may in an excess of caution or apprehension, read too much or too little into it. . . . It is the responsibility of the lawyer to probe; testimonial interrogation, and cross–examination in particular, is a probing, prying, pressing form of inquiry. If a witness evades, it is the lawyer's responsibility to recognize the evasion and to bring the witness back to the mark, to flush out the whole truth with the tools of adversary examination.
>
> . . . A jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was intended to mislead or divert the examiner; the state of mind of the witness is relevant only to the extent that it bears on whether "he does not believe [his answer] to be true." To hold otherwise would be to inject a new and confusing element into the adversary testimonial system we know. Witnesses would be unsure of the extent of their responsibility for the misunderstandings and inadequacies of examiners, and might well fear having that responsibility tested by a jury under the vague rubric of "intent to mislead" or "perjury by implication."

*Bronston v. United States, supra* at 358–59.

---

[1] *Bronston* involved construction of the federal perjury statute, 18 U.S.C. § 1621, so is not controlling here. Section 1621 is substantially similar to RCW 9A.72.020(1).

The court in *Bronston* dealt with an unresponsive, misleading answer.[2] In dicta, it distinguished the responsive answer.

> Whether an answer is true must be determined with reference to the question it purports to answer, not in isolation. An unresponsive answer is unique in this respect because its unresponsiveness by definition prevents its truthfulness from being tested in the context of the question—unless there is to be speculation as to what the unresponsive answer "implies."

*Bronston v. United States, supra* at 356 n.3.

This distinction was not followed in *United States v. Cook*, 489 F.2d 286 (9th Cir. 1973). In *Cook*, appellant's responsive answer[3] was considered indistinguishable from the unresponsive answer in *Bronston*. Interpreting *Bronston* to preclude a perjury conviction based on a literally true answer, the court subjected Cook's answer to a "precise grammatical reading" and found it to be literally true.

We find no meaningful distinction between responsive and unresponsive answers in this context.

> [W]hen . . . a witness' answers are literally true he may not be faulted for failing to volunteer more explicit information. Although such testimony may cause a misleading impression due to the failure of counsel to ask more specific questions, the witness' failure to volunteer testimony to avoid the misleading impression does not constitute perjury because the crucial element of falsity is not present in his testimony.

*In re Rosoto*, 10 Cal. 3d 939, 949, 519 P.2d 1065, 112 Cal. Rptr. 641, 69 A.L.R.3d 980, *cert. denied*, 419 U.S. 897, 42 L.

---

[2] Q. Do you have any bank accounts in Swiss banks, Mr. Bronston?
A. No, sir.
Q. Have you ever?
A. The company had an account there for about six months, in Zurich.
(In fact, Mr. Bronston once had a personal account in Swiss bank for a period of 5 years.)

[3] Q. Do you have any knowledge of law enforcement officers being paid by *operators of gambling establishments*?
A. No. I do not.
(Cook knew officers who had been involved in such activities in the past, but were no longer on the force.)

Ed. 2d 141, 95 S. Ct. 177 (1974). To hold otherwise would put the witness in peril of perjury for attempting to answer in a responsive manner, thereby encouraging the witness to answer unresponsively to the question as he understood it, or ask for clarification. Extending the principle of *Bronston* to the responsive answer appears to us to promote better trial procedure and protect the witness from perjury by implication.

The literal truth of the statement before us cannot be determined by analysis of grammar and usage. It depends on two questions of fact: (1) Whether the name "Spane Mill" refers to the entity to which Olson took the timbers; and (2) Whether Spane qualifies as a mill, so that it may be properly referred to as "the Spane Mill".

█ Whether circumstantial evidence excludes to a moral certainty every reasonable hypothesis other than that of the guilt is a question for the jury and not for the court, if the evidence is legally sufficient to take the case to the jury. *State v. White*, 74 Wn.2d 386, 444 P.2d 661 (1968). The test of legal sufficiency is whether there is substantial evidence tending to establish circumstances on which a necessary element of the crime may be predicated. *State v. Randecker*, 79 Wn.2d 512, 487 P.2d 1295 (1971). Granting all reasonable inferences to the State, we find substantial evidence in the record that Spane was called Spane Mill, or that it was in fact a mill regardless of its name. Therefore the question of the truth or falsity of Olson's statement should have been submitted to the jury.

As an alternative basis for upholding the trial court Olson maintains that the evidence that he had knowledge of the falsity of his answer was insufficient as a matter of law.

*Was there sufficient evidence that the answer was made with knowledge of its falsity?*

The State contends that there was ample circumstantial evidence to permit the reasonable inference that Olson knew his statement to be false. Citing *State v. Buchanan,*

*supra,* Olson argues that each element of perjury, including knowledge of falsity, must be proven by the corroborated direct testimony of at least one credible witness.

■ Olson's reading of *Buchanan* is too restrictive. Direct evidence of such a subjective element as a person's knowledge of his own falsehoods is a practical impossibility in most cases. It is generally held elsewhere that willfulness or knowledge of the falsity of a statement of fact may be inferred from circumstantial evidence alone. *United States v. Rivera,* 448 F.2d 757 (7th Cir. 1971); *People v. Guasti,* 110 Cal. App. 2d 456, 243 P.2d 59 (1952); Annot., 88 A.L.R.2d 852, 884 (1963). The court suggested as much in *State v. Rutledge, supra* at 527, when it stated that the need for corroboration extended only to the falsity of the testimony. We therefore adopt the rule that knowledge of falsity in a perjury case may be inferred from circumstantial evidence alone.

Applying this rule, we find substantial circumstantial evidence from which the jury could determine Olson's knowledge of falsity in two respects. The Spane Mill was one of several names by which the Spane Building Company in Stanwood was known. Olson had lived in Stanwood for some time, had worked for Spane and had in fact delivered timbers to Spane while a member of the bridge crew. There was testimony that other bridge crew employees knew the business as Spane Mill. All this supports a reasonable inference that Olson knew that "the Spane Mill" meant the Spane Building Company, and that with this knowledge he falsely denied taking timbers there.

Furthermore, there was evidence that Spane had some of the characteristic equipment of a saw mill and could be considered as such. Because Olson once worked there and had delivered there more recently, it is a reasonable inference that he knew a question concerning "the Spane Mill" referred to the mill operation at the Spane Building Company, regardless of its proper name.

## CONCLUSION

There was substantial evidence that Olson knowingly answered falsely while under oath. It is for the jury to determine, after hearing all of the evidence, whether guilt has been proven beyond a reasonable doubt.

Reversed and remanded.

FARRIS, C.J., and JAMES, J., concur.

Reconsideration denied May 31, 1978.

Review granted by Supreme Court December 1, 1978.