[Nos. 3525–II; 3870–II.   Division Two.   July 31, 1980.]

DALE NESSMAN, *Appellant,* v. HAROLD SUMPTER, ET AL, *Respondents.*

THE STATE OF WASHINGTON, *Respondent,* v. RONNIE MONROE HOWIE, *Appellant.*

---

*John L. Farra,* for appellant.

*John C. Strzynski,* for respondents.

PETRICH, J.—Ronnie Monroe Howie appeals the denial of his habeas corpus petition (No. 3525–II), and his subsequent conviction for perjury and life sentence as a habitual criminal (No. 3870–II). The cases have been consolidated for the purposes of this appeal.

The defendant raises 30 assignments of error in five briefs. With reference to the perjury trial, we need not discuss all of the many assignments since we agree with the

defendant's principal contention that the State did not present sufficient evidence to support conviction, and we therefore reverse and set aside the enhanced penalty imposed under RCW 9.92.090. We do, however, affirm the denial of the defendant's habeas corpus petition.

Aberdeen police arrested defendant as Dale Nessman for criminal trespass and obstructing an officer in March 1978. Within a few hours of the arrest, they learned he could be a Ronnie Monroe Howie who was wanted in California on a burglary charge and thereafter requested a fugitive warrant which was issued and served. Officer Cole rebooked defendant as Ronnie Howie, the name defendant then acknowledged. At the hearing held pursuant to RCW 10.88.340 on the fugitive warrant, defendant testified he was Dale Nessman and had never heard of Ronnie Monroe Howie. Officer Cole was not in attendance at the hearing. Subsequently, the prosecutor filed an information charging defendant with first degree perjury for denying he was Ronnie Howie while under oath at the fugitive hearing.[1] A jury convicted defendant of perjury. The prosecutor then successfully sought a determination that defendant was a habitual criminal because he had several prior California felony convictions in addition to the Washington felony conviction.

## HABEAS CORPUS PETITION

In his habeas corpus petition, defendant, as Dale Nessman, claimed the district court had not complied with the provisions of the Uniform Criminal Extradition Act, RCW 10.88. He maintained the district court should have made a formal order extending his confinement pending receipt of the Governor's warrant when it had not been served within the 30 days provided by RCW 10.88.340. RCW 10.88.360 allows a 60–day extension if the warrant is delayed. The district court judge testified at the habeas corpus hearing

---

[1] At the same time, the prosecutor served a Governor's warrant for defendant's extradition to California. We presume proceedings on that warrant have been stayed pending the outcome of Washington proceedings against defendant pursuant to RCW 10.88.380.

that he had ordered the extended confinement. Defendant cites no authority requiring a written order, and JCrR 4.01 gives the district court discretion to determine its own procedures absent specific prescriptions. We need not rule on the validity of defendant's challenges to procedures followed under the extradition process. At the time of the habeas corpus petition hearing the Governor's warrant had been served. Defendant was thenceforth lawfully in custody. We note defendant does not challenge the validity of the Governor's warrant.

In his appeal from the denial of his habeas corpus petition defendant raises two further issues which we find have no merit. He first argues that RCW 10.88.340 required him to testify at the fugitive hearing in violation of his Fifth Amendment privilege against self–incrimination.[2] Nothing in the record supports defendant's argument he was compelled to testify. Having done so voluntarily, he waived his Fifth Amendment privilege. *State v. Robbins,* 15 Wn. App. 108, 114, 547 P.2d 288, *review denied,* 87 Wn.2d 1012 (1976).

Defendant also argues the arresting officer did not have probable cause to believe defendant was committing a misdemeanor in his presence and that therefore his warrantless arrest was unjustified. Probable cause exists when "there is reasonable ground for suspicion, supported by circumstances within the knowledge of the arresting officer, which would warrant a cautious person's belief that the individual is guilty of a crime." *State v. Green,* 91 Wn.2d 431, 436, 588 P.2d 1370 (1979). The rightful tenant of the apartment in which defendant was arrested had complained

---

[2]RCW 10.88.340 states in part:

"If from the examination before the judge or magistrate it appears that the person held is the person charged with having committed the crime alleged and, . . . that he has fled from justice, the judge or magistrate must, by a warrant reciting the accusation, commit him to the county jail for such a time not exceeding thirty days and specified in the warrant, as will enable the arrest of the accused to be made under a warrant of the governor on a requisition of the executive authority of the state having jurisdiction of the offense, . . ."

to the arresting officer and asked him to remove defendant. The officer thus had probable cause to believe defendant was "knowingly remaining unlawfully" on another's premises. RCW 9A.52.080. The arresting officer was the same officer to whom defendant had given an apparently erroneous report of the accident he was investigating in violation of RCW 9A.76.020, "Obstructing a public servant" (making a "knowingly untrue statement" in a required report to a public servant). The officer thus also had probable cause to believe defendant was violating the latter statute. In light of the foregoing analysis, we affirm the denial of the habeas corpus petition.

## PERJURY[3]

At the perjury trial, the State's principal evidence to prove defendant's sworn testimony at the fugitive hearing was false, was Officer Cole's testimony that defendant had acknowledged his name was Howie when rebooked. In addition, the State presented the following corroborative evidence: a certified copy of a California driver's license issued to Ronnie Monroe Howie with his photograph, a photograph album containing many snapshots of defendant identified as "Ronnie," a small box bearing defendant's name and social security number, and the fact defendant responded to a greeting from a California police officer relayed to him by Washington police.[4]

■ Because perjury has a peculiar impact on the administration of our system of justice, the law has raised proof of this offense to a position unique in the rules of criminal evidence. ""Perjury requires a higher measure of

---

[3]First degree perjury consists of knowingly making a materially false statement while under oath in an official proceeding. RCW 9A.72.020.

[4]The photographs and box were seized at defendant's arrest. Defendant did not have the California driver's license among his possessions. The California driver's license was a copy certified by an officer of the California Department of Motor Vehicles. Defendant assigns error to its admission because of lack of proper certification and verification under CR 44(a)(1). In view of our disposition of this case we need not address this assignment.

proof than any other crime known to the law, treason alone excepted."'" *State v. Wallis,* 50 Wn.2d 350, 350, 311 P.2d 659 (1957). *See generally* 7 J. Wigmore, *Evidence* §§ 2032, 2038, 2040 (1978). Our courts have therefore held that the testimony of one witness or circumstantial evidence alone is not sufficient when the charge is perjury. To convict

"There must be the direct testimony of at least one credible witness, and that testimony to be sufficient must be positive and directly contradictory of the defendant's oath; in addition to such testimony, there must be either another such witness or corroborating circumstances established by independent evidence, and of such a character as clearly to turn the scale and overcome the oath of the defendant and the legal presumption of his innocence. Otherwise the defendant must be acquitted."

*State v. Rutledge,* 37 Wash. 523, 528, 79 P. 1123 (1905).[5]

This unique requirement reflects the underlying policy in Anglo–American jurisprudence of encouraging witnesses to

---

[5]Defendant objects to the court's refusal to give an instruction drawn from the rule quoted. In view of our disposition of the case, it is not necessary to address this claimed error. However, we deem the request for such an instruction is worthy of comment. The court's instructions were confined to those presented in 11 Wash. Prac., *Washington Pattern Jury Instructions—Criminal* (1977). The pattern instructions defining perjury and outlining what the State must prove for the jury to convict are drawn from the language of the statute. WPIC 118.01, 118.02; RCW 9A.72. Although the WPIC comment refers to *State v. Wallis,* 50 Wn.2d 350, 311 P.2d 659 (1957), and *State v. Rutledge,* 37 Wash. 523, 79 P. 1123 (1905), and the need for corroboration, the pattern instructions do not include a format for presenting the *Rutledge* rule to the jury. The pattern instructions serve an important purpose in presenting clear statements of the law for lay persons, reducing time spent arguing over instructions and in particular in reducing appeals on instructions alone. The pattern instructions are a valuable working tool and were not intended to present "a complete compendium of the criminal law." 11 Wash. Prac. *Preface,* at viii (1977).

The language used by the Supreme Court "is not ordinarily designed or intended as a model for jury instructions". *Swope v. Sundgren,* 73 Wn.2d 747, 750, 440 P.2d 494 (1968). In *Rutledge,* however, the Supreme Court did set forth its rule as the preferred instructions as a guide for the retrial of that case (reversed on grounds not related to the instruction). Following the general rule that a defendant is entitled to instructions which permit him to argue his theory of the case to the jury, if there is evidence to support it, *State v. Griffith,* 91 Wn.2d 572, 574, 589 P.2d 799 (1979), we believe that the trial court ought to have instructed the jury on the peculiar requirements of proof of perjury.

testify freely without fear of reprisals. J. Wigmore, *supra* § 2032, at 324 and § 2041, at 361. In *Bronston v. United States,* 409 U.S. 352, 359, 34 L. Ed. 2d 568, 93 S. Ct. 595 (1973), the Supreme Court contrasted the common law system of encouraging voluntary testimony and preventing perjury by relying on publicity, cross–examination, and the aid of a jury with the traditional French system which simply imposed capital punishment for any perjury while not permitting cross–examination or allowing an accused to present witnesses contrary to particular testimony.[6]

■ The "direct testimony" required by the rule must come from someone in a position to know of his or her own experience that the facts sworn to by defendant are false: "Contradictory statements [by defendant], sworn or unsworn, are not direct evidence of the falsity of the testimony which the law requires." *State v. Wallis, supra* at 354–55. Admissions and contradictory statements of the defendant are sufficient only as corroboration of the direct testimony required to support a perjury conviction. *State v. Buchanan,* 79 Wn.2d 740, 745, 489 P.2d 744 (1971). In *Wallis,* defendant's allegedly false testimony consisted of denying he had heard one DiLuzio make certain statements and denying that he had seen him perform certain actions. The court held insufficient under the *Rutledge* rule evidence from witnesses who said defendant had told them he had heard the statements and/or seen the actions. Such testimony did not prove *by direct and independent evidence* that defendant had heard the words or seen the actions.

---

[6]The court quoted Dean Wigmore who in turn excerpted the following from W. Best, *Evidence* §§ 605–606 (1849):

> [T]he obligation of protecting witnesses from oppression, or annoyance, by charges, or threats of charges of having borne false testimony, is far paramount to that of giving even perjury its deserts . . . The result accordingly [of the witness plus corroboration rule] is that in England little difficulty, comparatively speaking, is found in obtaining voluntary evidence for the purposes of justice; . . .

7 J. Wigmore, *Evidence* § 2041, at 361–62 (1978).

In *State v. Buchanan, supra,* the court upheld a perjury conviction on facts similar to those in this case. At a preliminary hearing defendant testified his name was Benton and that he was 17. He later told a probation officer his true name and adult age. At his perjury trial, the State presented testimony by defendant's mother which positively and directly contradicted defendant's oath under the rule in *Rutledge.* The admissions to the probation officer provided the necessary corroboration. In this case, however, there is no counterpart to Mrs. Buchanan, no one who testified of his or her own direct knowledge that defendant was not Dale Nessman and was Ronnie Howie. The State therefore has not met the special requirements for proving perjury. Accordingly, we reverse.

Our reversal of defendant's underlying perjury conviction renders the habitual criminal determination void. *See State v. Keith,* 86 Wn.2d 358, 544 P.2d 747 (1976).

Reversed and remanded for proceedings on the Governor's warrant.

PEARSON, A.C.J., and PETRIE, J., concur.

Reconsideration denied September 18, 1980.

Review denied by Supreme Court November 7, 1980.