[No. 14501-1-I.   Division One.   June 9, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. DALLAS DIAL, *Appellant.*

*Dallas Dial,* pro se, and *Nancy Talner* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Hogan, Deputy,* for respondent.

RINGOLD, A.C.J.—The defendant, Dallas Dial, appeals from his conviction of perjury in the second degree. While this appeal was pending, Dial filed a personal restraint petition, which we will consider as a pro se brief pursuant to RAP 10.1(d). We affirm.

In January 1978, Dial was charged with five counts of incest with his stepdaughter, Jody Dial. Subsequently, the Children's Protective Services filed a dependency petition. At a hearing on February 3, three of the Dial children, including Jody, were ordered removed from their home. Mrs. Patricia Dial then left the state with the children and began living in Oregon. She remained in Oregon until late April or early May of 1978 when she moved with her children to Idaho. During this flight, she used assumed names and the children did not attend school in order to avoid the Washington dependency proceedings.

When the King County Prosecutor's Office lost contact with Dial's wife and stepdaughter, a motion was filed to compel Dial to disclose their location so the State could secure their presence at trial. The motion was heard on March 27, 1978. After several witnesses testified for the State, Dial was called by his attorneys. Under oath he testified that he had not seen his wife since the dependency proceedings on February 3, nor did he know she intended to leave the jurisdiction. The court granted the motion and Dial was ordered to disclose all the information he had on

the whereabouts of his wife and Jody.

The State then learned of a letter sent by Patricia to Dial that had a Miami postmark. This letter was apparently provided to the State by Dial as per the court's order. The State then sought to depose Dial with regard to the location of his wife and Jody. The deposition was ordered on April 21, 1978 despite defense objections that it violated Dial's privilege against self-incrimination.

Dial again denied having any knowledge of the location of his wife or Jody. Since the State could not locate Patricia or Jody, the incest charges were dismissed without prejudice on May 1, 1978.

Patricia and Dial were divorced in January 1980. Dial and Jody were married on March 8, 1981.

On November 25, 1980, nearly 1 year after the divorce, Patricia Dial informed the King County Prosecutor's Office of her whereabouts. She alleged that Dial assisted in the family's various relocations to Oregon and Idaho and was instrumental in maintaining their absence from the jurisdiction. Dial was thereafter charged with tampering with a witness (Patricia) and second degree perjury stemming from his testimony of March 27 and April 21, 1978, in which he denied knowledge of Patricia and Jody's whereabouts.

Dial moved to suppress both the deposition of April 21 and his testimony of March 27 on Fifth Amendment grounds. The court ruled the testimony and deposition admissible.

Dial also moved in limine to exclude the fact that the original charges against him were five counts of incest against his former stepdaughter. The court limited the State to only divulge that Dial was charged with a felony in which his stepdaughter was the alleged victim. The witness tampering charge was dismissed.

A jury found Dial guilty of perjury in the second degree. Special interrogatories reveal that the jury was unanimous in finding that Dial committed perjury in his testimony of March 27 and his deposition of April 21, 1978. The court

imposed a 5–year suspended sentence, 1 year in King County Jail, plus various costs and assessments. Dial filed an appeal and a pro se personal restraint petition challenging this judgment and sentence. The appeal and petition were consolidated for consideration.

## RIGHT AGAINST SELF–INCRIMINATION

Dial argues that the April 21 deposition violated his right against self–incrimination. He asserts, therefore, that the jury should have only considered whether he committed perjury in his testimony of March 27.

The defendant contends that if the deposition of April 21 were excluded, the testimony of March 27 alone could not sustain a finding of perjury. RCW 9A.72.030(1) states that:

> A person is guilty of perjury in the second degree if, with intent to mislead a public servant in the performance of his duty, he makes a materially false statement, which he knows to be false under an oath required or authorized by law.

A "materially false statement" is defined as "any false statement oral or written, regardless of its admissibility under the rules of evidence, which could have affected the course or outcome of the proceeding". RCW 9A.72.010(1). The materiality of a false statement is determined by the court as a matter of law. RCW 9A.72.010(1); *see also State v. Carpenter,* 130 Wash. 23, 28, 225 P. 654 (1924); *State v. Daniels,* 10 Wn. App. 780, 781, 520 P.2d 178 (1974).

Dial maintains that the testimony he gave on March 27 contained no "materially false" statements. He bolsters this argument by indicating that the immateriality of the testimony is evidenced by the fact that after his testimony the prosecutor continued to pursue the motion to compel disclosure. This motion was then granted and later extended by a second order. Dial argues that these facts make it apparent that neither the prosecutor nor the court believed his testimony. He reasons, therefore, that the testimony had no effect on the course or outcome of the incest proceedings.

The purpose of the hearing on March 27 was to determine if Dial should be compelled to disclose any information he had regarding the whereabouts of his wife and stepdaughter. He testified then that he had not seen his wife since February 3, nor did he know she intended to leave the jurisdiction. Dial's testimony "*could have affected the course or outcome of the proceeding*". (Italics ours.) RCW 9A.72.010(1). It is probable that was precisely what Dial hoped to accomplish. Accordingly, the testimony given was material. The fact that the court chose to disbelieve Dial does not alter this conclusion.

Though Dial was only charged with one count of perjury, special interrogatories from the jurors reveal that they were unanimous in finding that Dial committed perjury on both March 27 and April 21. Since the jury's finding that Dial committed perjury on March 27 is alone sufficient to sustain Dial's conviction for perjury, this court need not consider Dial's constitutional objections to the admission of the April 21 deposition.

### SUFFICIENCY OF THE EVIDENCE

The requirements of proof in a perjury case were enunciated in *State v. Olson,* 92 Wn.2d 134, 594 P.2d 1337 (1979). In *Olson,* the court stated that in perjury cases the State must present:

1. The testimony of at least one credible witness which is positive and directly contradictory of the defendant's oath; and

2. Another such direct witness or independent evidence of corroborating circumstances of such a character as clearly to turn the scale and overcome the oath of the defendant and the legal presumption of his innocence.

*Olson,* at 136.

Dial argues that since "credible" witnesses are required by law, the State must exhibit some evidence in the record to support the jury's conclusion of credibility in order to sustain a conviction. He maintains that the witnesses in the case were inherently unbelievable. With regard to his

former wife, Patricia, he states that "[c]ommon sense dictates she would have nothing but hostility for the man who divorced her to marry her daughter." Joel Swafford, Patricia's son from a prior marriage, also testified for the State. Dial contends that his testimony is equally suspect since he had the same reasons as his mother to resent Dial and Joel admitted that there was friction between himself and Dial. The other State's witness, Elizabeth Dial, was the only child over whom Patricia retained custody, creating great potential for influence.

■ Dial is correct in asserting that the requirements of proof in perjury cases are the strictest known to law, outside of treason. *Olson,* at 136. It is well established, however, that witness credibility is always a jury question. *State v. Williams,* 96 Wn.2d 215, 222, 634 P.2d 868 (1981); *State v. Robinson,* 35 Wn. App. 898, 901, 671 P.2d 256 (1983). There is no reason to retreat from this position in perjury cases. Safeguards to prevent the prospect of perjury convictions based upon perjured testimony have already been provided. Indeed that is why the testimony of two credible witnesses is required. It appears from the record that the motives and credibility of the State's witnesses were adequately pursued at trial, so the determination of credibility was correctly within the jury's province. Once the two witness rule is satisfied, it is for the jury to decide the trustworthiness of the evidence, what weight it should be accorded and the credibility of the witnesses. *United States v. Davis,* 548 F.2d 840, 843–44 (9th Cir. 1977); *Tanner v. State,* 681 S.W.2d 626, 628 (Tex. Ct. App. 1983) ("it has long been within the province of the jury to determine for themselves whether they believe a particular witness in a perjury trial.").

The remaining contentions and the court's answers to those contentions have no precedential value and will not be published pursuant to RCW 2.06.040. *In re Marriage of Freedman,* 23 Wn. App. 27, 33, 592 P.2d 1124 (1979).

We affirm the trial court and dismiss the petition.

SWANSON, J., and HOLMAN, J. Pro Tem., concur.

Review denied by Supreme Court September 2, 1986.