[No. 29783-7-III.   Division Three.   May 3, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. JASMINE N. SINGH, *Appellant*.

*Susan M. Gasch* (of *Gasch Law Office*), for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Mark E. Lindsey* and *Andrew J. Metts III, Deputies*, for respondent.

¶1 KORSMO, C.J. — Need there be independent witnesses to the crime of perjury where the crime is recorded and the recording played at trial? Believing that the common law rule has no force in that circumstance, we affirm Jasmine Singh's conviction for first degree perjury.

## FACTS

¶2 Ms. Singh is the sister of Anthony Singh and Jamal Singh. Anthony Singh was incarcerated in the Spokane

County Jail awaiting trial on various charges at the times relevant to this case. He and his sister engaged in several telephone calls while he was in jail. Pursuant to jail policy, the calls were recorded and the parties advised of that fact.

¶3 Three telephone calls involving the two were made on November 16, 17, and 20, 2009. They spoke about various matters relating to Anthony Singh's upcoming trial, including two of the expected witnesses for the State, Matt Thompson and Officer Michael Roberge. In order to contradict expected testimony from the officer, the two discussed the differences between the east side and west side Rollin '60s Crips gangs and what Ms. Singh's research had uncovered about them. Anthony Singh also asked her to find material about other gangs and supply it to his attorney for transmission to him. Ms. Singh agreed that she would testify that Anthony Singh was not a gang member. Anthony Singh also asked his sister to get a copy of the discovery in his case and provide it to their brother, Jamal, who was also a prospective witness in Anthony's case.

¶4 An ER 404(b) hearing was held in Anthony Singh's case on November 23, 2009, before the Honorable Kathleen O'Connor in order to determine if evidence of Mr. Singh's alleged gang affiliation would be admissible at trial. Jasmine Singh testified at the hearing and denied that Anthony Singh and several other named individuals were gang members.

¶5 During cross-examination, after confirming that Ms. Singh had spoken with her brother on the telephone, the prosecutor asked her the following questions:

Q. Have you ever talked to him about this case?

A. Not really. Just kinda what's going on.

Q. You ever talk to him about any of the witnesses involved in the case?

A. No.

Q. You ever talk to him about the facts of the case?

A. No.

Q. You ever talk to him about anything that anybody else has testified about in this case?

A. No.

Ex. 7, at 8-9.

¶6 After hearing testimony, the trial court concluded that some of the proffered gang testimony could be used in Anthony Singh's trial. He eventually was convicted and sentenced to prison.

¶7 The prosecutor's office filed one count of first degree perjury against Jasmine Singh, alleging that she made a materially false statement by "replying 'no' to ever talking to the defendant, Anthony Singh, about witnesses in the case and facts of the case and testimony of the witnesses." Clerk's Papers at 1. The charges were based on the three recorded calls made from the jail and the cross-examination during the ER 404(b) hearing.

¶8 Ms. Singh waived her right to a jury trial and proceeded to a bench trial before the Honorable Salvatore Cozza. Officer Michael Roberge testified that he knew Ms. Singh and identified her voice on the recordings. Detective Jeffrey Barrington testified to the contents of the recordings and about Ms. Singh's testimony from the pretrial hearing in Anthony Singh's case. The detective had been the lead investigating officer in that prosecution and was present for Ms. Singh's testimony at the hearing.

¶9 The defense rested without presenting any witnesses. Defense counsel argued the case to the bench on the theory that her client's statements were not false because the prosecutor's questions were vague and the State had not proved that her client knew the statements were false. 2 Report of Proceedings (RP) at 113-15.

¶10 Judge Cozza disagreed. He found that the defendant's testimony was false and that the recording showed that she knew the statements were false. 2 RP at 115-16. In particular, her negative response to the question about talking to her brother concerning the case and the question

about talking concerning the witnesses "were demonstrably not true statements." 2 RP at 115. He believed that the statements were sufficiently significant that they could have misled Judge O'Connor, and concluded that the false testimony was therefore material. 2 RP at 116-17. Finding that the other elements were established, Judge Cozza turned to the heightened proof required in a perjury case:

> I think there is also an additional comment that needs to be made that perjury cases require somewhat of a higher burden of proof. I think that that is provided by the recordings in question here.

2 RP at 117.

¶11 The court imposed a first-time offender waiver of the presumptive sentence and imposed a term of 90 days' partial confinement and 12 months of community custody. Ms. Singh then timely appealed to this court.

## ANALYSIS

¶12 This appeal challenges the sufficiency of the evidence in two regards: whether the heightened standard of proof was met and whether the testimony was truly false. Ms. Singh also challenges three conditions of her sentence. Each challenge will be addressed in turn.

### Sufficiency of the Evidence

¶13 Evidence is sufficient to support a conviction if the record permits a trier-of-fact to determine that each element of the offense was proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Green*, 94 Wn.2d at 221-22.

¶14 First degree perjury is committed "if in any official proceeding" a person "makes a materially false statement

which he knows to be false under an oath required or authorized by law." Former RCW 9A.72.020(1) (1975). A "materially false statement" is one "which could have affected the course or outcome of the proceeding." RCW 9A.72.010(1).

■ ¶15 *Heightened Proof.* As recognized by the trial judge, the standard of proof in perjury proceedings is higher than in other criminal cases. The testimony of one witness or circumstantial evidence alone is insufficient to convict. *State v. Wallis*, 50 Wn.2d 350, 353, 311 P.2d 659 (1957). Instead, sufficient evidence requires that

> "[t]here must be the direct testimony of at least one credible witness, and that testimony to be sufficient must be positive and directly contradictory of the defendant's oath; in addition to such testimony, there must be either another such witness or corroborating circumstances established by independent evidence, and of such a character as clearly to turn the scale and overcome the oath of the defendant and the legal presumption of his innocence. Otherwise the defendant must be acquitted."

*State v. Rutledge*, 37 Wash. 523, 528, 79 P. 1123 (1905) (quoting *People v. Rodley*, 131 Cal. 240, 63 P. 351, 359 (1900)). The direct testimony must come "from someone in a position to know of his or her own experience that the facts sworn to by defendant are false." *Nessman v. Sumpter*, 27 Wn. App. 18, 24, 615 P.2d 522 (1980). Corroboration is required only on the knowledge of falsity element of the crime. *Rutledge*, 37 Wash. at 527.

■ ■ ¶16 Ms. Singh's argument on the heightened proof requirement essentially focuses on the circular nature of the State's proof on the knowledge element. Detective Barrington knew that Ms. Singh's testimony was false because he had heard the recordings of her conversations with her brother, and those recordings also served to corroborate his testimony that she knew she was lying when she testified. As noted, the trial court expressly found the recordings to be the corroboration of the detective's testimony. 2 RP at 117. The essential question then becomes

whether the recordings that served as the detective's basis of knowledge could also corroborate that testimony. For two reasons, we believe that is permissible.

¶17 First, courts have in other circumstances allowed witnesses to testify concerning information they viewed on videotape. *See, e.g., Domingo v. Boeing Emps.' Credit Union,* 124 Wn. App. 71, 79-80, 98 P.3d 1222 (2004) (holding that where witness had viewed videotapes herself but was not physically present at events depicted in videotape, her statements as to what the videotapes contained were based on her personal knowledge and properly considered in summary judgment proceeding); *United States v. Begay,* 42 F.3d 486, 502-03 (9th Cir. 1994) (holding that police officer had personal knowledge of events and could testify as to events depicted in videotape, even though he was not physically present at the events in question, where he had personally viewed videotape himself). Similarly, Detective Barrington had personal knowledge of the substance of the recorded conversations and based on that personal knowledge could properly provide testimony directly contradicting Ms. Singh's statements under oath.

¶18 Second, one purpose of the heightened proof requirement is to avoid swearing contests that pit one witness's oath against another's.[1] *State v. Dial,* 44 Wn. App. 11, 16, 720 P.2d 461 (1986); *State v. White,* 31 Wn. App. 655, 660, 644 P.2d 693 (1982). It ensures that there was a genuine or true lie. That objective is easily satisfied when the criminal incident is completely recorded. The three taped recordings here established what Ms. Singh said and did, and what she knew prior to taking the witness stand at her brother's hearing.

¶19 Although it appears this evidentiary situation has not arisen in earlier Washington perjury cases, it has been considered in New York in the context of wiretap cases. *See,*

---

[1] Another purpose of the rule is to encourage witnesses to voluntarily appear by protecting them from harassment and threats. *Nessman,* 27 Wn. App. at 23-24.

*e.g.*, *People v. D'Alvia*, 171 A.D.2d 96, 575 N.Y.S.2d 495 (1991) (finding that the falsity of the defendant's testimony was sufficiently proved by a tape recording of the subject meeting, the testimony of the investigator who wired the informant prior to the meeting and monitored the meeting through a transmitter, and the defendant's own testimony, which corresponded to many details in the tape recording); *People v. La Placa*, 89 Misc. 2d 530, 392 N.Y.S.2d 214 (1977) (holding that recordings of defendant's conversations captured by court-ordered wiretap, monitored by two detectives who identified the voices, and the testimony of a third detective who interpreted the language as relating to gambling activities was sufficient to support indictment charging defendant with first degree perjury).

¶20 In *La Placa*, the court noted that under New York law, the falsity of a statement may not be established by the uncorroborated testimony of a single witness, and recognized that the purpose of the rule was to avoid unfounded perjury prosecutions "based on the complaints of defeated litigants and made in retaliation against honest witnesses." 89 Misc. 2d at 531. However, the court went on to recognize that the case before it was not one where the grand jury was asked to believe one oath against another, and that "[t]he very concern of the Legislature in promulgating the two-witness rule and the concern of the courts in commenting thereon do not reach nor condemn a situation in which the defendant has supplied all of the evidence against himself." *Id.* Just like the defendant in *La Placa*, Ms. Singh supplied all the evidence against herself here by having conversations with her brother that the jail recorded, and then subsequently lying under oath about the substance of those conversations. The recordings, although not truly independent from Detective Barrington's testimony, corroborate the testimony and are of such a character as to clearly overcome the oath of Ms. Singh and the legal presumption of her innocence. *Rutledge*, 37 Wash. at 528. The concern of "one oath against another" that often arises in perjury cases is not present here.

¶21 When faced with a perjury case in which the defendant's trial testimony was in direct contradiction to a videotape recording of the defendant's conduct, the Virginia Court of Appeals decided that there was no need to apply its corroboration rule. *See Donati v. Commonwealth*, 37 Va. App. 575, 577-78, 560 S.E.2d 455 (2002) (holding that corroborating evidence was not required to convict a defendant of perjury where the defendant's denials under oath that he exposed himself and masturbated in public, acts which constituted the basis of the perjury charge, were contradicted by a properly authenticated videotape and photographs of his actions). While this approach is arguably applicable to an audio recording of a telephone conversation, we need not go that far in this case since the detective testified without objection to the contents of the recording. The recording amply corroborated his testimony.

¶22 For both reasons, we conclude that the purposes behind the heightened proof requirements for perjury are satisfied when the evidence of the knowingly false statement is recorded prior to the hearing at which the perjury is subsequently committed. In such circumstance, the recorded evidence can both provide a basis for the witness's testimony and corroborate that testimony.

¶23 The evidence was sufficient to satisfy the heightened proof requirements applicable to a perjury prosecution.

¶24 *Falsity of Testimony.* Ms. Singh's other challenge[2] to the sufficiency of the evidence is a contention that her testimony was not false. She believes the questions asked on cross-examination were too vague or imprecise to make her answers false. We disagree.

---

[2] Ms. Singh also contends that her statements were not materially false statements. Her argument is made in a single footnote that states that they were not materially false because they were not genuinely false. *See* Br. of Appellant at 14 n.5. In other words, the materiality of her testimony (importance to the outcome of the hearing at which it was made) is not disputed, but only the truth or falsity of that testimony is at issue.

¶25 An answer that is literally true does not constitute perjury, even if it is misleading or evasive. *State v. Olson*, 92 Wn.2d 134, 137, 594 P.2d 1337 (1979). When determining whether perjury has occurred, the questions and answers at issue must be interpreted in the context of what immediately preceded and succeeded them. *State v. Stump*, 73 Wn. App. 625, 628, 870 P.2d 333 (1994). To sustain a perjury conviction, the questions and answers which support the allegation must demonstrate both that the defendant was fully aware of the actual meaning behind the examiner's questions and that the defendant knew her answers were not the truth. *Id.*

¶26 In the case at bench, Judge Cozza, as fact-finder, focused on the first of the two cited questions from the prosecutor's cross-examination—did Ms. Singh talk to her brother about the case and did she talk to him about any of the witnesses involved in the case. He found those answers to be "demonstrably not true." 2 RP at 115.

¶27 The answer to the first question was "Not really. Just kinda what's going on." That answer was contrary to the recorded conversations in which she repeatedly discussed her brother's case with him. However, the answer was qualified in its terms and, hence, ambiguous in the context of her testimony. Since the answer essentially affirmed that she had talked to her brother, it would not alone support a perjury conviction. While misleading with respect to the degree and nature of her conversations, the answer was true in its most basic sense—she had talked to her brother.

¶28 The second question was answered with a simple "no"—she had not talked to him about any of the witnesses. As the trial court aptly characterized it, this answer was "demonstrably" false. There had been express conversations about two State's witnesses, Matt Thompson and Officer Roberge. Nearly the entire 13-page transcript of the final recorded conversation involved how to address the officer's anticipated testimony that Mr. Singh was a gang member.

Ms. Singh was directed to find information to feed defense counsel to combat that testimony. She also reported to her brother on the results of some of her research to that point. She also was directed to find the discovery and provide it to their brother so that he might assist the defense case. She also agreed to be a witness for her brother and testify that he was not a gang member.

¶29 This evidence established that Ms. Singh did talk to her brother about the witnesses at the upcoming hearing and that she knew that they would be witnesses. Her denial of that fact under oath was a false statement that she knew to be false. The subsequent denial of talking about the witnesses also tended to more clearly make the answer to the first question ("Just kinda what's going on.") a false statement. As noted, testimony is considered in context with the other questions and answers given by the witness. *Stump*, 73 Wn. App. at 628. While that first answer standing alone would be insufficient to support a perjury conviction, it was still evidence showing the false nature of the testimony.

¶30 The evidence at bench permitted the trier-of-fact to conclude that Ms. Singh knowingly made a materially false statement under oath during an official court proceeding. The evidence therefore supported the judgment. It was sufficient.

¶31 The conviction and judgment are affirmed.

¶32 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

KULIK and SIDDOWAY, JJ., concur.